# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

LAWRENCE MILLER, *as Admin. of Estate of Lawrence Miller, II,*

        Plaintiff,

v.

WARDEN EMMA COLLINS, *et al.,*

        Defendants.

Case No. 2:22-cv-1944
Judge Sarah D. Morrison
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

Plaintiff Lawrence Miller is the father of the Decedent, Lawrence Miller, II, and the administrator of his estate; Decedent contracted COVID-19 while incarcerated at Pickaway Correctional Institution ("PCI") and succumbed to his illness while receiving treatment at Ohio State University Hospital. Plaintiff brought this action seeking redress from several named and unnamed defendants who were employed by Ohio Department of Rehabilitation and Correction ("ODRC") during the relevant period.

Defendants filed a Motion to Dismiss (ECF No. 17), to which Plaintiff responded (ECF No. 27) and Defendants replied (ECF No. 31). The motion is now ripe for consideration.

For the reasons that follow, Defendants' motion is **GRANTED**.

I.     BACKGROUND

The following draws from the allegations in the Amended Complaint (ECF No. 9), which are considered true for purposes of the pending motion. *See Gavitt v. Born*, 835 F.3d 623, 639–40 (6th Cir. 2016).

On February 21, 2020, Mr. Miller was admitted to PCI to serve a one-and-a-half-year sentence. (*Id.* at ¶ 26.) He was placed in PCI's infirmary unit where he continued treatment for preexisting medical conditions, including Chronic Kidney Disease (Stage III). (*Id.* at ¶¶ 28–29.)

On March 9, 2020, Governor Mike DeWine declared a state of emergency for the State of Ohio due to the dangerous effects of COVID-19. (*Id.* at ¶ 11 (citing Office of Governor Mike DeWine, Ohio Exec. Order, No. 2020-01D (March 9, 2020)).)

At some point during his incarceration, Mr. Miller contracted COVID-19 and, after developing complications from the virus, he was transferred to OSU Hospital for treatment. (*Id.* at ¶¶ 30–31.) Mr. Miller died on May 3, 2020; the cause of death was Acute Hypoxemic Respiratory Failure related to his COVID-19 complications. (*Id.* at ¶ 32.)

Plaintiff claims that his son's death was preventable and that it resulted from Defendants' deliberate indifference to the spread of COVID-19 and the substantial risk that the virus posed to the health and safety of inmates at the facility. (*Id.* at ¶¶ 26, 34.) He has brought a § 1983 claim against Defendants in their individual and official capacities alleging violations of the Eighth and Fourteenth

Amendments to the United States Constitution and a state law survivorship claim, wrongful death claim, and negligence claim.

Defendants now move to dismiss all of Plaintiff's claims.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal alteration and quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). The Supreme Court has explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 555). While "Rule 8 marks a notable and generous departure from the

3

hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 679.

### III. ANALYSIS

#### A. Section 1983 Claim

Plaintiff is not permitted to bring his § 1983 claim against Defendants in their official capacities. Section 1983 imposes liability only upon a "person" who, under color of law, subjects another person to a deprivation of federal rights, and State employees acting in their official capacity are not "persons" under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Gean v. Hattaway*, 330 F.3d 758, 766 (6th Cir. 2003) (holding that § 1983 claims against agents of the state in their official capacity are not cognizable).

To state a claim against Defendants in their individual capacity, Plaintiff must allege sufficient facts that each defendant "through his or her own individual actions, *personally* violated [the] plaintiff's rights. . .." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015) (emphasis in original). In that same vein, § 1983 does not "incorporate doctrines of vicarious liability." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). Rather, to incur liability, a defendant must have directly participated in or encouraged an unconstitutional act. *Alexander v. Carter for Byrd*, 733 F. App'x 256, 263 (6th Cir. 2018). It is not enough to allege that a supervisory defendant played "a passive role in the alleged violation or showed mere tacit approval of the goings on." *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999).

4

The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement by "ensur[ing] that inmates receive adequate food, clothing, shelter, and medical care" and taking "reasonable measures to guarantee the safety of the inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). "A prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan,* 511 U.S. 825, 828 (1994).

To plead an Eighth Amendment violation based on deliberate indifference, Plaintiff must allege facts sufficient to establish both an objective and subjective element. *Wilson v. Williams*, 961 F.3d 829, 839–40 (6th Cir. 2020) (citing *Farmer*, at 834). For the former, Plaintiff must allege that Decedent was "incarcerated under conditions that posed a substantial risk of serious harm." *Id*. at 840. For the latter, he must allege that each defendant knew that Decedent faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it. *Id*. "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Id*.

Plaintiff has alleged sufficient facts to satisfy the objective element. Courts have repeatedly found that COVID-19 poses a substantial risk of serious harm when the virus enters a prison. *See id*. at 840 ("The COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death."); *Valentine v. Collier*, 956 F.3d 797, 801 (5th Cir.2020) ("There is no doubt

5

that infectious diseases generally and COVID-19 specifically can pose a risk of serious or fatal harm to prison inmates.*"); Smith v. Dewine*, 476 F. Supp. 3d 635, 662 (S.D. Ohio 2020) (Sargus, J.) ("This Court agrees with the other district courts across the country who have found COVID-19 to be an objectively intolerable risk of harm to prisoners when it enters a prison."). The risk of serious harm is even greater where, as here, an incarcerated individual has a pre-existing condition that increases his vulnerability to the virus. (Am. Compl., at ¶ 13 n. 7 (citing CENTERS FOR DISEASE CONTROL AND PREVENTION, *Certain Medical Conditions and Risk for Severe COVID-19 Illness*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (accessed Feb. 19, 2021)).)

Nevertheless, Plaintiff has not alleged sufficient facts about specific defendants to satisfy the subjective element. Although Plaintiff has sued Emma Collins, Annette Chambers-Smith, and John/Jane Doe employees, he has not identified any basis for individual liability for these defendants. Collins is the warden of PCI and Chambers-Smith is the Director of ODRC. Plaintiff does not allege that these individuals had any personal involvement in his son's death by failing to take, or encouraging others not to take, reasonable measures to address the substantial risk posed by COVID-19.

Instead, the factual allegations in the Amended Complaint are that unspecified "Defendants" knew or should have known that Mr. Miller's pre-existing conditions made him vulnerable to the spread of COVID-19, (*Id.* at ¶¶ 21, 23, 34, 36, 38–39), and that "Defendants" failed or refused to take reasonable measures to

6

prevent and manage the spread of the virus (*Id.* at ¶¶ 18–19, 24–25, 34–35, 37, 39–40). Such allegations are not attributable to any individual defendant and are insufficient to state a § 1983 claim. *See Marcilis v. Twp. of Redford*, 693 F.3d 589, 596 (6th Cir. 2012) (upholding dismissal of complaint that made "only categorical references to 'Defendants.'").

In addition, the Amended Complaint cites an April 30, 2020 COVID-19 Update wherein Chambers-Smith outlined ODRC's plan to prevent and manage spread of the virus in Ohio prisons.[1] (Am. Compl., ¶ 16 n. 10 (citing THE OHIO CHANNEL, *Governor Mike DeWine—4-30-2020—COVID-19 Update*, https://ohiochannel.org/video/governor-mike-dewine-4-30-2020-covid-19-update (accessed Feb. 19, 2021))). Acknowledgement of reasonable measures taken by Chambers-Smith is an independent basis for dismissal of the claim against her. *See Brown v. Chambers-Smith,* No. 4:20-CV-2523, 2021 WL 3109627, at *2 (N.D. Ohio

---

[1] During that update, Chambers-Smith detailed specific measures that were already in place at Ohio prisons, such as:

- Daily symptom and temperature screening for staff and inmates at all facilities with assistance of Ohio National Guard (*Governor Mike DeWine—4-30-2020—COVID-19 Update*, at 12:45–55);
- CDC visits and advice at facilities (*id.* at 11:20);
- Contact tracing (*id.* at 11:10–15);
- Separating inmates and staff into cohorts to limit contact within facilities (*id.* at 10:50–11:10);
- Halt on movement of inmates between ODRC facilities (*id.* at 10:45–50);
- Disallowing visitors at ODRC facilities (*id.* at 9:30–45);
- Masking and gloving (*id.* at 10:15–20);
- Inspection of HVAC systems (*id.* at 11:40–45);
- Use of only CDC approved cleaning materials (*id.* at 10:30–45).

7

July 21, 2021) (dismissing deliberate indifference claim where pleadings acknowledge that Chambers-Smith responded to risks posed by COVID-19).

Because Plaintiff did not allege specific facts about specific defendants, he has failed to state a § 1983 claim against any defendant in their individual capacity.

Defendants' motion is **GRANTED** as to Plaintiff's § 1983 claim.

B. State law claims

Having dismissed Plaintiff's federal claim, the Court declines to exercise supplemental jurisdiction over his state law claims. The United States district courts are "courts of limited jurisdiction" that "possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Once a court has original jurisdiction over some claims in the action, it can exercise supplemental jurisdiction over additional claims that are part of the same case or controversy. *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 725 (1966); *Harper v. Auto Alliance Int'l, Inc.*, 392 F.3d 195, 209 (6th Cir. 2004) (holding that claims are part of the same case or controversy if they derive from a "common nucleus of operative facts"). But supplemental jurisdiction is a matter of judicial discretion and "need not be exercised in every case in which it is found to exist." *United Mine Workers of Am.*, 383 U.S. at 726.

The Court finds that exercising supplemental jurisdiction over Plaintiff's state law claims after dismissing his federal claim would not serve judicial economy, convenience, or comity, and therefore declines to do so. *See Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988).

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss (ECF No. 17) is **GRANTED** and the case is **DISMISSED**.

  **IT IS SO ORDERED.**

         /s/ Sarah D. Morrison
         **SARAH D. MORRISON**
         **UNITED STATES DISTRICT JUDGE**